**Michael P. SAMPSON, Plaintiff–Appellant,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 95–55702.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1996.

Decided Dec. 26, 1996.

Daniel Weber, San Diego, California, for plaintiff-appellant.

Jeffrey Baird, San Francisco, California, for defendant-appellee.

Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI,* Judge, U.S. Court of International Trade.

* Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

1. The function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. Consequently, Shirley S. Chater was substituted for Donna E. Shalala as Appellee in this action.

FLETCHER, Circuit Judge:

Appellant Michael Sampson applied for and was denied social security disability benefits by the Appellee Commissioner of Social Security.[1] Sampson petitioned the district court for judicial review of the denial of benefits. The district court reversed the denial of benefits and remanded to the Social Security Administration for further proceedings, but denied Sampson's request for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

Sampson appeals from the district court's denial of attorney's fees. We reverse and remand for determination of the proper amount of fees.

## FACTUAL BACKGROUND

Sampson is 48 years old and has completed the twelfth grade. He has worked as a truck driver, construction laborer, and cement finisher. In December 1976, when Sampson was 28 years old, he became ill and was unable to see. Dr. Wiederholt at the UC San Diego Medical Center diagnosed multiple sclerosis with optic neuritis (impaired vision) as an accompanying symptom. Sampson stopped working in February of 1977 due to his illness. The Veterans Administration ("VA") has rated Sampson as permanently and totally disabled since February 1, 1977.

In January 1977, Sampson's doctors at the UC San Diego Medical Center counseled Sampson that the initial prognosis for his multiple sclerosis was "quite good" and that they anticipated Sampson would have a "benign course" with no (or only one) further attacks.

However, on June 21, 1977, two VA doctors confirmed the diagnosis of multiple sclerosis, and found Sampson still to be suffering from optic neuritis, chronic lumbar strain, and hyperuricemia.

From 1977 on, Sampson claims to have had numerous physical problems related to his multiple sclerosis including trouble walking,

blurred vision, numbness in his hands, feet and neck, fatigue, back pain, and muscle spasms.

Sampson's girlfriend lived with him between 1978 and 1981 and took care of his personal needs including cooking, shopping and laundry. Sampson was depressed and suicidal during this time. He was treated by a psychologist and took Prozac for two years.

Oddly, the administrative record contains no medical records for the period from 1979 to 1990.

> There is an indication that during a portion of this time Sampson had a substance abuse problem. One record states that Sampson "was lost to treatment at that time because of heavy involvement in substance abuse, cocaine and alcohol." But other than this one statement, there is no explanation for this lack of medical records. Interestingly, the ALJ did not ask Sampson or his mother if Sampson received any medical treatment during this time period.

Order of the district court.

The administrative record does contain a Certification of Permanent Total Disability, dated September 18, 1981, stating that the records of the VA show that on January 1, 1981, Sampson was rated as permanently totally disabled.

There are also some medical records for 1990 and 1991. Dr. Raffer, Sampson's doctor, stated that Sampson's multiple sclerosis was a chronic progressive disease and had been complicated by severe depression. Sampson was hospitalized on June 27, 1990 due to an acute onset of suicidal fantasies and threats. He was diagnosed with a major depressive disorder.

By 1990 Sampson was experiencing severe symptoms of multiple sclerosis. In 1991, Dr. Raffer stated that Sampson was totally disabled for gainful employment due to his motor deficiencies, and that his condition would worsen.

## PROCEDURAL HISTORY

Sampson first applied for disability benefits on March 27, 1990, alleging disability since January 3, 1978 due to multiple sclerosis and impaired vision, speech, balance, walking, and coordination. For Sampson to receive benefits, he needed to show that his disability began before the expiration of his insured status on June 30, 1981. When Sampson's application was denied, he requested a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on March 16, 1992 at which Sampson was not represented by counsel. Only Sampson and his mother appeared on his behalf at the hearing. On May 26, 1992, the ALJ found that Sampson was not disabled as defined in the Social Security Act, as amended. The Appeals Council denied Sampson's request for review of the ALJ's decision. Sampson then filed a complaint for judicial review with the district court.

On December 23, 1994, the district court reversed the Commissioner's decision denying benefits to Sampson and remanded for further proceedings. The district court found that the ALJ's decision was not supported by substantial evidence or based on proper legal standards. The district court ordered the ALJ to conduct further proceedings (1) to ascertain whether Sampson received any medical attention between 1979 and 1990, and after 1991, and to try to obtain such medical reports, if any; and (2) to take lay testimony regarding Sampson's condition prior to 1981. The district court also ordered the ALJ to "review the evidence with the assistance of a medical adviser, pursuant to SSR [Social Security Ruling] 83–20, to ascertain the onset of Sampson's disability and give proper weight to the records from 1990–1991 and the VA's rating and certification of disability." The district court ordered the Commissioner to issue a final written decision within 90 days.

On January 10, 1995, Sampson filed a motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). The district court denied Sampson's motion, holding that the Commissioner's position "was 'substantially justified' under a 'reasonableness' test." The district court gave no explanation for its finding of substantial justification, merely citing *Albrecht v. Heckler,* 765 F.2d 914 (9th Cir.

1985), for support. Sampson now appeals the denial of fees.

## STANDARD OF REVIEW

 The district court's decision denying attorney's fees sought under EAJA is reviewed for an abuse of discretion. *United States v. 87 Skyline Terrace*, 26 F.3d 923, 927 (9th Cir.1994); *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 385 (9th Cir.1993); *Bullfrog Films, Inc. v. Wick*, 959 F.2d 782, 784 (9th Cir.1992). "The district court abuses its discretion when its 'decision is based on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision.'" *Williams v. Bowen*, 966 F.2d 1259, 1260 (9th Cir.1992) (quoting *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988)).

 "A finding than an agency's position was substantially justified when the agency's position was based on violations of the Constitution, federal statute or the agency's own regulations, constitutes an abuse of discretion." *Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir.1996); *Yang v. Shalala*, 22 F.3d 213, 217–218 (9th Cir.1994).

## DISCUSSION

Under the EAJA a court shall award attorney's fees to a prevailing party[2] "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

 "In this circuit we apply a reasonableness standard in determining whether the government's position was substantially justified for purposes of the EAJA." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir.1995). "To show substantial justification for her position, the Secretary has the burden of establishing that the conduct had a 'reasonable basis both in law and fact.'" *Kali*, 854 F.2d at 332 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101

L.Ed.2d 490 (1988)): "In evaluating the government's position to determine whether it was substantially justified, we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1987).

 In this case the district court abused its discretion because the Commissioner did not prove that her position had a reasonable basis in either fact or law. The Commissioner completely disregarded substantial evidence of the onset of Sampson's disability even though there was no contradictory evidence except the one doctor's prognosis as to the future progression of the disease which prognosis turned out to be wrong. The ALJ's legal errors committed were such that the Commissioner's position lacked reasonable basis in law.

The Commissioner argues that she was substantially justified in determining that Sampson had failed to meet his burden of proving that he had become disabled prior to the expiration of his insured status in 1981, and that his disability continued until at least January 1989. The Commissioner contends that there was an "utter failure [on Sampson's part] to adduce any medical evidence of disability prior to 1990, long after the expiration of his insured status." Brief for Appellee at 11. The Commissioner characterizes the medical evidence before 1981 as "normal" or "benign", relying heavily on Sampson's initial good prognosis. The Commissioner further claims that "no doctor stated or even implied that claimant was disabled for the requisite continuous time period that had been at issue before the Commissioner." Brief of Appellee at 6.

The Commissioner ignored the fact that two VA doctors examined Sampson and found him to be suffering from multiple sclerosis, impaired vision, chronic lumbar strain, and hyperuricemia in 1977 confirming the UC San Diego Medical Center doctor's diag-

**2.** The Commissioner concedes that Sampson is the prevailing party in the litigation due to his success in securing a remand. The remand in this case was a remand under "sentence four" of 42 U.S.C. § 405(g). Under *Shalala v. Schaefer*, 509 U.S. 292, 300–02, 113 S.Ct. 2625, 2630–32, 125 L.Ed.2d 239 (1993), a social security claimant who secures a sentence four remand is a prevailing party under § 2412(d)(1).

nosis. The Commissioner also ignored the VA's rating and certification of Sampson as totally and permanently disabled from February 3, 1977. The Commissioner claims that she may give the VA evidence as much or as little weight as she chooses, and she chose to dismiss the rating stating that the examining doctor "found that the examination was essentially negative." That is a mischaracterization of the medical evidence. While the VA doctors found many of Sampson's systems normal, they diagnosed him as suffering from multiple sclerosis with accompanying severe symptoms. Although the VA rating does not by itself make Sampson eligible for social security disability benefits, the district court found that "the VA's examination, rating and certification that Sampson was permanently and totally [disabled constitute] substantial evidence that Sampson was disabled prior to 1981. Furthermore, there is no evidence that contradicts the VA's assessment."

▮ In addition to the lack of a factual basis for the Commissioner's position, the ALJ's legal errors deprive the Commissioner of substantial justification. The ALJ, when a claimant is unrepresented, has an obligation to develop the record fully and fairly. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985); *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). We review "both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Barry*, 825 F.2d at 1330. The nature and scope of the ALJ's legal errors are material in determining whether the Commissioner's decision to defend them was substantially justified. *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir.1995). As we noted in *Flores*, "the inquiry into the government's litigation position will ordinarily encompass the inquiry into the administrative decision. It is difficult to imagine any circumstance in which the government's decision to defend its actions in court would be substantially justified, but the underlying administrative decision would not." *Id.* at 570 n. 11 (citations omitted).

In this case, the ALJ failed to inquire whether Sampson had sought medical treatment between 1979 and 1990, and failed to inquire adequately of either Sampson or his mother. Nor did the ALJ take adequate account of the testimony Sampson's mother did give. "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). "Disregard of [the mother's] evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." *Sprague*, 812 F.2d at 1232. Without explanation, the ALJ dismissed Sampson's testimony as not credible. In its order reversing and remanding Sampson's case, the district court stated that "[t]he ALJ should have considered [Sampson's and his mother's] testimony, especially since there were few medical records for the relevant time period." *See Smith v. Bowen*, 849 F.2d 1222, 1224 (9th Cir.1988).

▮ The ALJ also failed to examine what medical evidence there was, particularly the 1990 and 1991 medical records, with a medical advisor as required by SSR 83–20 when the medical evidence is ambiguous as to the date of the onset of the disability. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Id.* at 1225.

## CONCLUSION

The district court abused its discretion in denying an award of attorney's fees. In light of the nature of the ALJ's legal and factual errors, the Commissioner's decision to oppose Sampson's request for remand was not substantially justified. We reverse and remand to the district court for determination of the proper amount of fees.

REVERSED and REMANDED.